**William H. Sherlock, OSB #903816**
lsherlock@eugenelaw.com
HUTCHINSON COX
940 Willamette Street, Suite 400
P.O. Box 10886
Eugene, Oregon 97440
Telephone:   (541) 686-9160
Facsimile:   (541) 343-8693
Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SPOKANE DIVISION

| | |
|---|---|
| **NORTH CASCADES CONSERVATION COUNCIL,**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**UNITED STATES FOREST SERVICE**, a federal agency of the United States Department of Agriculture, and **KRISTIN BAIL**, in her official capacity as Forest Supervisor, Okanogan-Wenatchee National Forest, United States Forest Service,<br><br>      **Defendants.** | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |

Plaintiff respectfully brings this action challenging the conduct of Defendants Kristin Bail ("Bail") and the United States Forest Service ("Forest Service") authorizing the Twisp Restoration Project ("Project"). This suit alleges violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the Federal Advisory Committee Act ("FACA"), 5 U.S.C.App. § 1 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*

Page 1 – COMPLAINT

## JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Final agency action exists that is subject to judicial review pursuant to 5 U.S.C. § 704. An actual, justiciable controversy exists between Plaintiff and Defendants. The court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 & 2202 and 5 U.S.C. §§ 705 & 706.

2. Venue is proper in this court under 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district. Defendant Bail's office is located within this judicial district, and the Environmental Assessment ("Final EA") at issue in this litigation was prepared within this judicial district. The lands affected by the Project are within this judicial district.

3. Plaintiff exhausted any and all available and required administrative remedies for its claims against Defendants.

## PARTIES

4. Plaintiff North Cascades Conservation Council ("NCCC") is a non-profit organization dedicated to preserving the scenic, scientific, recreational, educational, and wilderness values of the North Cascades. NCCC's members regularly recreate in the forests and lands encompassed by the Project to observe the huge variety of flora and fauna present throughout the Okanogan-Wenatchee National Forest. NCCC's members have recreated in the Project area in the past and intend to do so again in the near future. In fact, several of NCCC's members live in or adjacent to areas that will be adversely affected by the Project. The interests of NCCC and its members will be irreparably harmed and impaired if

the Project is allowed to proceed in its current form, which violates federal environmental laws and regulations.

5.     NCCC's and its members' aesthetic, recreational, scientific, educational, residential, and other interests have been and will continue to be adversely affected and irreparably injured if the Forest Service continues to act and fail to act as alleged herein by implementing the Project as planned. These are actual, concrete, particularized injuries caused directly by the Forest Service's failure to comply with its duties as mandated by the APA, FACA, and NEPA. If granted, NCCC's requested relief will redress these injuries.

6.     Defendant Bail is the Forest Supervisor for the Okanogan-Wenatchee National Forest. She is sued in her official capacity. As the Forest Supervisor for the Okanogan-Wenatchee National Forest, Bail signed the Finding of No Significant Impact ("FONSI") issued for the Project. Bail is the federal official charged with responsibility for the Forest Service officials' actions and inactions challenged herein.

7.     Defendant Forest Service is an agency of the United States and is a division of the Department of Agriculture. The Forest Service is charged with managing the lands and resources within the Okanogan-Wenatchee National Forest in accordance with federal laws and regulations.

**FACTS**

8.     The original version of the Project was proposed in November 2019 ("Original TRP"). The Original TRP is described in the Draft Environment Assessment ("Draft EA") issued by the Forest Service in or around October 2020. As described in the Draft EA, the Original TRP was to take place within 77,037 acres of the Okanogan-Wenatchee National Forest.

9. The Original TRP proposed five phases of commercial harvesting for implementation of the proposed action. The current Project is proposed to take place in the areas described in the Original TRP as Phases 1 and 2, along with portions of the areas designated as Phases 3 and 4. The Final EA for the current Project eliminated the phased approach.

10. In or around January 2022, the Forest Service announced a large reduction in the stated acreage of the Original TRP. The current Project will cover approximately 24,000 acres of the Okanogan-Wenatchee National Forest. The Project in its current form was developed by the Forest Service in collaboration with the North Central Washington Forest Health Collaborative ("NCWFHC"). The Forest Service met with NCWFHC as early as November 3, 2021, to discuss the planned reduction in the size of the Project. After NCCC learned of the November 2021 Forest Service-NCWFHC meeting, NCCC asked the Forest Service to re-open the public comment period for the Project. The Forest Service declined to do so.

11. The Forest Service described the 2021 Cedar Creek Wildfire as one of the primary reasons for the reduced size of the Project. The prevalence of wildfires in state and federal forest lands and the risk of future fires are both described as justifications for the Project. Allegedly to reduce the risk and impacts from fire, the Project includes commercial logging in the form of both specified treatments and nonspecific condition-based management. Condition-based management is a process where Defendants or private logging contractors will decide on an area-by-area basis how many trees to cut, how to conduct the logging, etc. The public will not be informed exactly how the acreage under condition-based management will be cut ahead of time.

Page 4 – COMPLAINT

12.     Both the Original TRP and current Project rely heavily on condition-based management instead of pre-identified treatments. 21,000 of the 24,000 acres of the current Project are slated for condition-based management, meaning there is no way for the public to know from the EA how the forest will be logged ahead of time for the vast majority of the project area. The Original TRP took the same condition-based management approach for a majority of the 77,000-acre Original TRP project area, and the project area for the current Project will occur in those areas designated in the Original TRP for condition-based management per Figure 4 of the Draft EA.

13.     After the 2021 Cedar Creek Wildfire, the Forest Service decided to reduce the size of the Project to encompass those areas that were unaffected by the fire. The Forest Service made the decision to reduce the Project in this way to avoid doing a full re-analysis of the project area and allow logging to occur as soon as possible. The Cedar Creek Wildfire created changed circumstances for the project area that require a new draft environmental assessment and the attendant public comment period. The public has had no opportunity to comment on the Project as currently planned.

14.     The current Project is 69% smaller than the Original TRP. Among other changes, the Final EA changes the parameters for larger-diameter tree thinning, changes the transportation and road use characteristics described in the Draft EA, and changes the duration from thirty years to twenty. The public has had no opportunity to comment on these changes outside of the objections period for those who commented on the Draft EA.

15.     The current Project involves no fewer than four timber sales and additional logging and forestry to take place over a period of twenty years. The

Page 5 – COMPLAINT

Project calls for 10.9 miles of new, permanent road built on the project area, in addition to 4.8 miles of temporary roads. The Forest Service intends to keep 0.6 miles of these temporary roads available for up to three years after completion of the Project to be available for additional access to other federal and state lands. The Project also calls for 28 miles of closed roads to be reopened for use by private logging contractors carrying out the prescriptions and proposed treatment described in the EA.

16. The 21,000-plus acres of condition-based management will be carried out by private logging contractors. The private contractors are not obligated to mark or indicate which trees will be cut ahead of prescribed treatments under condition-based management. There will be no consistent oversight of the private logging contractors by federal employees on the ground in the units where logging will occur. The Forest Service has been unable to access some of the units to be logged, and the condition-based management approach is advanced as a means to adjust to conditions on the ground without surveying the entire project area before finalization of the EA and FONSI.

17. The acreage removed from the current version of the Project will be subject to known, but unspecified in the Final EA, future federal prescription and treatment. The Forest Service is currently developing a project informally known as the Midnight Restoration Project ("Midnight"), again in collaboration with NCWFHC. Midnight's project area will cover some or all of the acreage removed from the current version of the Project. The EA for the Project fails to mention Midnight or similar projects planned for the acreage removed from the Project.

18. The EA only considers two alternatives, the proposed action and the no-action alternative. Other reasonable alternatives were proposed to the Forest

Page 6 – COMPLAINT

Service during the planning for the original Twisp Restoration Project. Because the Forest Service failed to reopen the comment period for the Project as currently planned, NCCC and the other members of the public had no opportunity to comment and propose additional alternatives for the Forest Service to consider. Given the significant changed circumstances for the project area, which formed the Forest Service's basis for the significant reduction in the size of the Project, the public needs an opportunity to comment. The only entity outside of the government with the opportunity to comment on the modified Project and discuss the proposed changes with the Forest Service was NCWFHC.

## FIRST CLAIM FOR RELIEF

*NEPA Violations*

*Count 1: Failure to Disclose and Analyze the Direct, Indirect and Cumulative Impacts of the Proposed Action and Its Alternatives*

19.     Plaintiff incorporates by reference all preceding paragraphs.

20.     NEPA directs federal agencies to give full and meaningful consideration to all reasonable alternatives.  42 U.S.C. § 4332(2)(E); 40 C.F.R. § 1501.5; 40 C.F.R. § 1502.14.  Reasonable alternatives may not be artificially limited by an unreasonable purpose and need statement.

21.     The Project's EA considered only two alternatives: the preferred alternative and the no-action alternative.  No fewer than eleven other alternatives mentioned in the EA were rejected as being inconsistent with the Project's purpose and need as stated in the EA. The public had no opportunity to advance additional alternatives following the Cedar Creek wildfire, even though the Forest Service acknowledged that the fire created changed circumstances and

used those changed circumstances to make the significant changes between the Original TRP and current Project.

22.     The Project's stated purpose and need were crafted to produce the pre-selected Preferred Alternative. The EA's analysis, which relies on scientifically controversial thinning to manage wildfire risk, was a post-hoc analysis designed to pre-determine the preferred alternative.

23.     The EA failed to consider a reasonable range of alternatives, including alternatives that would have accomplished the Project's goals without allowing unsupervised, unspecified condition-based management over roughly 21,000 of the Project's 24,000 acres.

24.     The EA failed to adequately consider the direct, indirect, and cumulative effects of the Project by, for example, failing to disclose and analyze known future projects like Midnight and failing to ascertain and describe what will result from the condition-based management of 21,000 acres of the project area.

25.     Accordingly, Defendants acted arbitrarily and capriciously, abused their discretion, and acted in excess of their statutory authority in contravention of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(2)(A), (C). The EA should be rejected and remanded back to Defendants for further factual development and analysis.

*Count 2: Failure to Adequately Inform Public*

26.     Plaintiff incorporates by reference all preceding paragraphs.

27.     Defendants failed to reopen the public comment period after reducing the size of the Project from 77,000 acres to 24,000 acres. The public, aside from

NCWFCH, was thusly denied opportunity to comment on the current version of the Project, which bears little resemblance to the original version.

28.   The use of condition-based management over roughly 21,000 acres of the project area makes it impossible for the public to adequately determine what trees will be cut, where, or in what amounts. Instead, private logging contractors are empowered to make logging decisions with little to no oversight by federal employees on the ground.

29.   Accordingly, Defendants acted arbitrarily and capriciously, abused their discretion, and acted in excess of their statutory authority in contravention of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(2)(A), (C).  The EA should be rejected and remanded back to Defendants to be published in draft form for public comment and further factual development and analysis.

*Count 3: Failure to Prepare Environmental Impact Statement*

30.   Plaintiffs incorporate by reference all preceding paragraphs.

31.   NEPA requires the Forest Service to prepare an EIS when a proposed major federal action may significantly affect the quality of the environment. 42 U.S.C. § 4332(2)(C). Agencies are required to consider a number of factors and the degree to which the project will affect the environment. 40 C.F.R. § 1501.3(b).

32.   21,000 acres of the project area will utilize condition-based management, which by definition lacks specific descriptions or limitations of any kind. The Project is taking place in areas home to several listed species, and at least one of the Project's stated goals, wildfire reduction, is a subject of scientific controversy. The Project's admitted large urban interface means that failed attempts at wildfire reduction or actions exacerbating wildfire risk and intensity will have a significant adverse impact on the human environment. For these

reasons, and more, the Project will have a significant impact on the environment to an extent necessitating an environmental impact statement.

33. The Forest Service's decision to authorize and implement the Project without first preparing and EIS is arbitrary, capricious, and not in compliance with NEPA. 5 U.S.C. § 706(2)(A).

## SECOND CLAIM FOR RELIEF

*Federal Advisory Committee Act Violations*

34. Plaintiff incorporates by reference all preceding paragraphs.

35. The Forest Service is utilizing NCWFHC as an advisory committee without adhering to the requirements of the Federal Advisory Committee Act ("FACA"), 5 U.S.C.App. § 1 *et seq.* Defendants developed the current version of the Project in direct collaboration with NCWFHC without opening the Project for public comment.

36. Accordingly, Defendants acted arbitrarily and capriciously, abused their discretion, and acted in excess of their statutory authority in contravention of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(2)(a) & (c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the court grant the following relief:

1. Declare that Defendants violated NEPA and its implementing regulations in designing, analyzing, and implementing the Project EA and FONSI;

2. Vacate the Project EA and FONSI;

3. Declare that the Forest Service is violating FACA with respect to NCWFHC;

4. Enjoin the Forest Service and its agents from proceeding with the Project, or any portion thereof, unless and until the violations of federal law set forth herein have been corrected to the satisfaction of this court;

5. Award Plaintiff costs, attorney fees, and other expenses under the Equal Access to Justice Act; and

6. Grant such additional relief and remedies as this court deems proper.

DATED this 22nd day of November, 2022.

    Respectfully submitted,

    HUTCHINSON COX

By: _____
William H. Sherlock, OSB #903816
lsherlock@eugenelaw.com
541-686-9160
Of Attorneys for Plaintiff

Page 11 – COMPLAINT